Good afternoon and welcome to the United States Court of Appeals for the Ninth Circuit. The time is set for oral argument for re-hearing en bloc in the case of United States v. Bastide-Hernandez. And before we begin, if counsel, once they get to the podium, would like to take off their masks, they may do so. We're ready to proceed with the appellant. Chief Judge Murguía, and may it please the Court, Scott Meisler from the Department of Justice on behalf of the United States. I'd like to reserve four minutes for rebuttal, if I may. In the more than three years since the Supreme Court decision in Pereira, no court of appeals has endorsed a ruling like the one the District Court issued here, which treats the omission of date and time information from a notice to appear as a defect in subject matter jurisdiction that serves to void a removal order, even if the issue is raised for the first time years later in a collateral attack. This Court should reverse that ruling on any of three independent grounds. First, the requirements governing the commencement of removal proceedings are akin to docketing or claim processing rules that are forfeited when, as here, the non-citizen does not timely invoke them. Second, as the three-judge panel in this case correctly held, a notice to appear that omits date and time information is sufficient to commence removal proceedings under the regulations, which are the source of law that directly speak to what must be filed in the Immigration Court. And third, the Supreme Court's decision in Palomar, Santiago makes clear that at a minimum, the District Court erred in excusing the defendant here from satisfying the collateral attack criteria in 8 U.S.C. 1326d. So, are you advocating, in order to reach the conclusion that you wish in this case, that we overrule any Ninth Circuit precedent? We are not, Your Honor. We are asking, essentially, that the Court clarify some of the terminology, I think, that's used. And to answer Your Honor's question, I think it may be helpful just to lay out, if I can, how the government views the interplay here between the statutes and the regulations. So, in our view, and I think the defendant agrees with this, Congress has conferred authority on immigration judges in 8 U.S.C. 1229, Bill A, to decide on the inadmissibility or deportability of a non-citizen. In the neighboring section, the one the Supreme Court has construed in Pereira and in Chavez, the Court set out what must be served on, as it given to, in the words of the statute, the non-citizen at the outset. Can I stop you on this, Mr. Companion, analysis? That is a statute that does require the time and place at which the proceeding will be held to be in the document. And as the Seventh Circuit held, the notice to appear under that statutory, that statute, is defective if it omits the time and place of hearing. Does the government agree with that, or is it arguing something different here? No, I think we accept, Your Honor, that, as Ms. Chavez held, in provisions that reference the definition in 8 U.S.C. 1229A1, there has to be one document. It has to be everything in a single document. I think Your Honor knows this from the Pozo Sanchez case. In other statutory provisions that expressly cross-reference Section 1229A's definition, we accept that that's the definition that applies from Ms. Chavez. And so what's different here, of course, and I think this hopefully dovetails with the explanation I was trying to give, is that I think every court that's looked at this agrees that the statute doesn't speak to what must be filed in the Immigration Court to convince proceedings. And so that's where the Attorney General exercised authority to prescribe, quote-unquote, rules of procedure. That's what the subchapter is called in the CFR. So, counsel, so the Supreme Court, in your opinion, the Supreme Court has not weighed in on what is a subject matter jurisdictional prerequisite under any of these statutory provisions? That's correct, Your Honor, because I think we know that in part from the disposition of Ms. Chavez and Pereira. And I don't mean to emphasize this point too much because if I'm up here talking about having to be careful with jurisdictional rules, I don't want to suggest that drive-by rulings are controlling. But it is notable, and several courts of appeals have remarked, that the court in Madre Pereira or Ms. Chavez suggested that it itself lacked jurisdiction or unremanned jurisdiction, so to speak, by the power of the judiciary authority of the Immigration Court. So it's in question. I'd also note that in Ms. Chavez, in his dissent, So, counsel, more specifically, Chairman Giffey, we talk about jurisdiction. Is the government's position that we did not mean subject matter jurisdiction there, or do we actually need to expressly overrule that? Well, it's hard for me to tell the court. I recognize members of the court who are on the Karen Giffey panel are here, so it's hard for me to read minds and tell you what I think. I mean, you can't be shy. I mean, do you agree with Karen Giffey? Is it correctly decided? Karen Giffey is correctly decided. I think I tried to answer your question, Judge Callahan, probably not precisely enough to say that. I think what we're really asking for is a clarification of terminology. Because, again, we think once the court puts the pieces together and says, broad grant of regulatory authority in 1229a, yes, service on notice given to a noncitizen, that's the statutory definition Judge Wardloff referenced. But once you're out of that framework and trying to figure out what has to be filed in the Immigration Court, we think Karen Giffey got it basically right. The question just was – Let me ask you, because when you started, in this case, I don't mean you, I mean the government, the government said that the jurisdiction is solely a creation of the regulations. I also went back to look at the briefing in Karen Giffey, which I have some familiarity, as you know, and basically the government argued the same thing. Now the government is saying, no, this is a claims processing provisions within the regulations. So what has caused the government to change its position here? Well, I think, like others in this area, there's been a lot of judicial decisions, and we're just, I think, trying to understand them as they've come along. I would agree with Your Honor. I went back and looked at the brief. I think it was imprecise in some regards. Remember, the Supreme Court itself has said that the court has – the court itself has misused the word jurisdiction. It's been imprecise. And so I think the arguments we made to Your Honor in Karen Giffey, I think, are basically the same, aside from, I think, some subtleties of terminology. And just to be clear then, when and under what authority does the subject matter or the ability to decide the case, when does that jurisdiction invest? So I think what we would say, Your Honor, is that when the notice to appear the charging document under the regulation is filed, that's when proceedings properly commence. The top line issue, what is the adjudicatory authority of immigration judges, is provided by 1229 little a. And so we agree very much with the analysis of the Fourth Circuit, Judge Harris's opinion for the Fourth Circuit and Cortez, and how she structures the analysis. That's what is the broad grant of regulatory authority, adjudicatory authority to the immigration courts, 1229 little a. And as a temporal matter, of course, something has to be filed with the immigration judge. And under the regulations that Your Honor analyzed in Karen Giffey, those are going to happen when a notice to appear or another charging document is filed with the immigration court. And so I also want to mention... Is that when jurisdiction invests? That's what Judge McCarron asked you. Right. I guess I'm trying to avoid using the J word, Your Honor, because I think it's a little bit confusing. Let's use big J and little j. Right. Because I'm asking for the big J. Right. So I think what we would say there, Your Honor, is that that is when authority... Sorry, the proceedings are properly commenced upon the filing of the notice to appear. We don't think the court... I mean, this, I think, is the teaching of City of Arlington as well. The court shouldn't try to reflexively pinpoint, I think, a certain moment when jurisdiction invests. I think the analysis there may also be fostered by an analogy that the Eleventh Circuit drew between civil complaints. We don't think of jurisdiction investing upon the filing of a civil complaint. That's usually when the case gets before the court, and then you look to see... But you're invoking the jurisdiction of the court. For example, the Central District would have subject matter jurisdiction over potentially all of these cases, but it's not until the complaints file that we invoke the jurisdiction of the court. So the language in the regulations, is it ambiguous when it uses the word jurisdiction? I don't think it's ambiguous in kind of the way that triggers deference, but I do think that, to paraphrase the Supreme Court, jurisdiction is a word of many meanings. And to us, it's important here and significant. Also, can I ask a question? Can you please finish answering my question? I appreciate that. That the term jurisdiction invests is paired with, and proceedings commence. And if you look at the cognate regulation, we cite it, I think, on page 17 or so of our brief. It's also in the CFR. It has the same substance, I think, as that jurisdictional provision, but it doesn't have the word jurisdiction. It just says, proceedings commence upon the filing of a notice to appear. That's really what's going on here. It's marking a temporal, I feel a little bit, I should say, Your Honor, the history of the regulation that both sides, I think, have invoked. We know exactly what was going on here. This was a moment when the Executive Office of Immigration Review was being stood up in the 1980s and was trying to basically give more calendar control to immigration judges. They were saying, at the old INS, now DHS, you're able to cancel things on our calendar up until the moment before the parties step foot in front of a judge. We don't want that. We want a clear demarcation of, can we control our calendars to reduce backlogs, make sure that we don't have vacant spaces on our calendars. That, I think, in our view, and that's the Fourth Circuit case in New Cortez, is not the stuff of a sort of a true subject matter jurisdictional defect that can be raised at any point in proceedings, potentially, even if a party has conceded the point earlier on. Can I ask a question about, the problem I have is jurisdiction vests. That seems different. That seems to put us into the Big J category. Now, the government made the argument that regulations cannot define subject matter jurisdiction. Did the government just get this wrong in the regulation? Should they have never used the word vest? Should we just read that out? How do we deal with that? Right. I think the way to deal with it is to read it in light of the neighboring language I mentioned, the commenced proceedings language, and to read it in light of its structure and placement in the scheme. That provision that says jurisdiction vests is in a subpart of the CFR that's called Rules of Procedure, and that was enacted, as I mentioned before, as part of this package. In light of any other statutory or regulatory language, I understand that jurisdiction can be ambiguous, but where the Congress or the government uses jurisdiction vests, and that is not treated as subject matter jurisdiction. No, I think the two examples we got familiar with are the ones we gave in the brief run, which are statutes construed by the Supreme Court in Steel Company, which was basically that jurisdiction to enforce was the language, I think. And in Reed Elsevier, which is a case about the prerequisites to find a copyright infringement suit, that statute had in it a provision that said that the absence of a certain party before the court shall not deprive the court of jurisdiction. It's a pretty strong language. And the Supreme Court said those don't automatically make these true restrictions of subject matter jurisdiction. So it's not a magic words test. I don't think either way, either in our favor or the other side's favor, meaning that it says jurisdiction, it's not necessarily the big J, so to speak. But I also think the Supreme Court has recognized, sometimes for historical reasons, that statutes that don't use the word jurisdiction can nonetheless be understood as that kind of a restriction. Would you make the express reference to jurisdiction in the transitional provision in Section 309 of IHRA? Thank you, Your Honor. I guess one point of order, which is that I wanted to mention that since the briefs were simultaneous, we didn't point this out. That transitional rule was construed by the Tenth Circuit in a case called Lyra Ramirez, which is cited in our brief. That, to my knowledge, is the only court of appeals to address that in a published opinion. And it found that the indications were insufficient to render it jurisdictional. I think making these key points. First of all, it was in a provision that was only available for a very limited period of time. That was only triggered at the Attorney General's election. So if the Attorney General chose not to apply the new statute, the 1996 statute, to old cases, that provision would never come into play at all. So I think it's very strange for Congress to bury a major jurisdictional provision in a transitional rule that may never have any practical application. And the third key point, Your Honor, is that the conferred jurisdiction language there was not actually referencing a notice to appear. It was referencing the notice to hearing, the second document that is used in many of the cases you've seen, that was expressly permitted under the old statutory scheme, where the charging document was an order to show cause, not a notice to appear. But why is that last point relevant? Isn't that just because it was a transition document that was dealing with the former statute? Well, I think it's relevant because I think it would be a strange way to make it clear that a notice to appear was jurisdictional, if the thing you're saying, conferred jurisdiction, was a notice of hearing. That's the point I think. Because notice to appear is now substituting for that under the new statute, right? It's substituting for the combination of the order to show cause and the notice of hearing. Yes. But, again, Congress there just picked up the second of the two documents and didn't tie it to the words notice to appear. And so, again, I think it matters, Your Honor, because the Supreme Court has applied essentially a clear statement rule that if a statute doesn't clearly indicate something is truly jurisdictional in the strict sense, the court shouldn't read it that way. That's why it matters to me. That's what the Tenth Circuit, I think, said in their review. Interesting but not clear. Not clear enough. Counsel, I know we asked for a digital briefing on this case, which has had it going in an interesting direction. But I'm curious in light of Palomar-Santiago, the Supreme Court saying you have to satisfy all three factors of 1326B, do we get to this discussion, if you're us, do we get to this discussion, which I think is a very interesting discussion and I think very highly of Judge Harris in the Fourth Circuit. But do we get there if you can't satisfy the other factors of 1326D? I think that's kind of an order of operations decision for the court and not for us. I mean, that is the narrowest ground for the court to rule on. And so if doing less is something that you're interested in, I think that is available. I'm not understanding certain things that you're saying. I feel like I'm getting some double talk here. If we determine that 8 U.S.C. 1326D applies here, should we remand to the district court or should we find that Mr. Basidi's amendment does not meet the criteria for relief? I think you should, as to the jurisdiction, when he's calling a jurisdictional claim, you should find that he has to satisfy the 1326D requirements. And I think we've argued that he can't do so. The panel didn't reach that. But I think it's quite clear he can't do that. Do we have to remand it? Or if it's clear that unless he can show that he can satisfy it, what would a remand accomplish? I think the only thing, and this may be a better question for Mr. Sheldon, the remand could accomplish the other things the panel majority listed. Not this claim, Your Honor, but if he wanted to raise any claims about failure of service, not compliance. What is your position on it? Because we decided here that he doesn't meet it. I think we haven't taken a position on it before the en banc court, Your Honor. For me, is there any evidence of exhaustion of his jurisdiction claim? No, not at all. Is there any evidence anywhere in the record that the procedure did not give him an opportunity to appeal? No. And if you need only one of three, and I didn't ask you about the third, but if you only need one of three, why does the government take the position that we shouldn't just decide it here? I think you can and should decide it here, Your Honor. I was trying to answer the question about Judge Owen's opening question of whether that's the only thing you should decide. I think you should. But we specifically asked you, should we decide it here or do we have to remand it? And you said you didn't answer that. Now what are you saying? We should decide. I apologize, Your Honor. I think I was understanding you have a follow-up on Judge Owen's question. I apologize. I wasn't trying to give you double talk. I think you can and should decide the 1326D issue. I was trying to address the concern of whether that's the only thing you should decide. Right. Can you answer Judge Owen's question, please? If we reach 1326 and, you know, her problem also besides Santiago, do we need to do anything else here? I don't think you need to do anything else. I think the question then would be what to do with the first part of the three-judge panel's analysis, right, going forward. If other cases come to this Court in which no juridic notice. Sorry, Your Honor. I didn't mean to interrupt you. I think you're answering my question. But I think that's where you started by saying essentially that it's above your pay grade, that we're going to have to decide which way we want to do that. I'm just trying to make sure that I understand that. And I'm not trying to be flippant, but I am trying to understand your position in response to Judge Owen's question, which is different than Judge Callahan's question. If we go to 1326, do we need to do anything more to resolve this case? And I think your answer is no. No. And then Judge Callahan's question, of course, is separate, which is should we decide that here or rebound? Right. And I think we didn't have – I'll say this. We did not have a problem with the way the three-judge panel handled that, which is to say essentially you're out on this quote-unquote jurisdictional claim, on this void ab initio. You're automatically excused or automatically satisfied because of the nature of the claim you're presenting. That I think, if the Court agrees that Palmar-San Diego applies, that that is over. And the only question that would be whether the other matters, the three-judge panel mentioned, the service issues and whatnot, should go back to the district court. Why would we do that? We don't – I mean, the three-judge panel is no longer here. We're here really on embankment hearing with respect to what happened in the district court. If Mr. Bastique cannot satisfy the 1326 criteria, then what would be writing about in the abstract an advisory opinion? Because it wouldn't apply to his case, correct? That's true, Your Honor, although I think courts can give alternative grounds for holdings, independent alternative grounds, and that's what the Fourth Circuit did in Cortez's case, and that's what the Fifth Circuit did in Pierre Paul. So I don't think it's beyond this Court's purview to give multiple bases for it. And, again, that to me really is a question of judicial administration for this Court because you are the one seeing – I should mention that I don't know how many are pending, but the Court has held a number of cases for the en banc court's disposition here. So, again, I'm not telling you you have to decide more than enough to reverse the dismissal of this indictment, but the Court may wish to clarify what the law is in this area. And, again, while the government was quite happy with the decision in Karen Giffey, I think it takes care of many of the cases in this area, the ones in which the notices to appear simply lack date and time information. We don't think that's been vitiated by Ms. Chavez or any other rulings in this Court since then. We're happy with that. The issue with the claim processing and docketing rule of characterization may come into play in future challenges before this Court when defendants of criminal cases or non-citizen immigration proceedings argue that other provisions that the notice to appear doesn't satisfy, for example, the address requirement. Counsel, but we don't typically, as a matter of judicial restraint, we don't typically reach out to answer other questions. We don't need to answer, hence my questions. And it's not intended to be a trick question. I just want to make sure that your position is clear. We wouldn't need to reach any more than 132060, if I'm understanding you correctly. You would not need to, strictly speaking. I think one where we may be miscommunicating is that, you know, once we take a case on bonk, the three-judge panel's opinion is vacated. So that may be part of our miscommunication. Will you raise the hypothetical question about what will we do with the other issues decided by the three-judge panel? I interrupted. Sorry. I just want to ask about the interaction between 1326 and the NTA issue, if you assume for a moment there's a jurisdictional problem. I understand you think he has to meet 1326 anyway, even if the NTA issue is jurisdictional. Correct. But so how does it fit together? So the first two prongs of 1326 could potentially be about whether there was a knowing and voluntary waiver of his appeal, right? There's some question maybe in this case about those two prongs and the appeal waiver. At that point, would the NTA issue be the third prong of 1326, or would there be some other issue like the waiver itself of the appeal is the unfairness that we talked about in the third prong, and then the NTA issue is the prejudice? Like, how does it all fit together? That's a really good question. So I just want to make sure I understand the question. Basically, you're kind of mixing and matching there in the sense that the — I'll let him speak for a second that he could have a claim that there was a jurisdictional problem. I know you don't agree with that. Right. But say there is a problem that's jurisdictional. And you're saying, well, we don't even — we can just reach 1326 and he can't meet the prongs. Yes. But say we need a remand to figure out if he can reach the prongs, if he can satisfy the prongs. Maybe it wasn't a knowing and voluntary waiver of his appeal rights. You know, there's that thing on the back. We don't know what happened and why it says the waiver of appeal. Right. Say that wasn't knowing and voluntary. I think our cases say that satisfies the first two prongs. If he can satisfy the first two prongs of 1326, then do we talk about the NTA issue as the third prong, or do we talk about something else as the third prong as a gateway to get to the NTA issue? I'll be honest here. I have not parsed it in that way. I think I'm inclined to say that either way he should lose on the NTA issue. Because I would refer the court to Judge Easterbrook's opinion in Cal and Montiel, which said in our brief that it's not fundamentally unfair in these circumstances. And so I think that, to me, even if you were able to do that, assuming you were able to take advantage of the court's favorable case law on skipping or automatically satisfying prongs one and two of 1326, and then swoop in with fundamentally unfair for a court that lacked adjudicatory authority to enter this order against me. So if that's your answer, then it seems like you're saying that most people won't be able to satisfy 1326 if they're trying to collaterally attack an NTA that was defective. So even if it was a jurisdictional rule, I'm trying to square that with the government's position that I think has been in other cases that the world would fall apart basically if we held this as a jurisdictional rule. Because everyone's case would have to be revisited, including the people who got asylum. It seems like you're not saying that. Well, I think two points, Rhonda. One is that many of those cases were immigration cases. There were petitions for review from immigration courts where I think... But if they're closed now, it can't be collateral. I mean, if you can't collaterally attack, I guess I'm not sure why a closed case is going to have to be reopened. In the immigration proceedings, you mean? Yeah. Right, I think that is, some courts have said that, right? I think that is something that courts haven't settled on. On the one hand, you have decisions like Judge Harrison's in court tests for the Fourth Circuit. Judge Easterbrook said this for the Seventh Circuit. It said, did you guys read Contract Footnote 9? You can't collaterally attack such a matter of jurisdiction. You're stuck. On the other hand, the Sixth Circuit and the Eleventh Circuit, in cases where I think this hadn't been properly preserved, basically thought that it was such a fundamental question of jurisdiction that they reached it anyway on appeal where it hadn't been exhausted or raised. So, just to make it long and clear how courts are going to treat this. Was that before the Supreme Court's ruling in Paloma? It was, Your Honor. That's another reason as well. Yes. Do you know of any rule that we should be looking at that permits you a freestanding collateral attack on subject matter jurisdiction, not within the original proceeding, but a freestanding collateral attack? Did Your Honor ask to just retain a rule of law or something in the immigration regulations? I'm happy to look at either. I'm not aware of one that specifically carves out subject matter jurisdiction and says you can do this. The rules I understand as per Contract v. Ryan is if you had the opportunity, the chance to attack subject matter jurisdiction in the initial proceedings, and those are closed, now it's collateral. And so, it's off limits at that point. And so, I'm going to ask you to wade into an area that's probably well beyond what we have to decide right now. But in your supplemental brief, you briefly, I think only once in the whole brief, mentioned that this notice of the time, place, and date may be a matter of due process. And it got me to thinking about suppose we agree with you that the raids are merely claim processing rules and not jurisdictional, in which case the petitioner would, or the defendant would, waive the defect if it's not timely raised. I just got to wondering how would he, what would be the timely, what opportunity would he have to timely raise that defect? If he doesn't have the notice of a hearing, or a time, or a place, or a date, or the address, for that matter, how does he complain about not having that information? Well, the Seventh Circuit, Your Honor, has the most developed jurisprudence on this, as such a claim processing rule. And they have said you have to object early. It's basically first hearing. Oh, so at once there's a curative. So you're assuming there's a defect, but it has to be cured for there to be a first hearing. Otherwise, how would he know to show up or to waive? Yeah, right. So I think that's a slightly different point, Your Honor, which is if he doesn't show up at all, he's removed in absentia. This court has a recent decision called Singh v. Garland, which applies the special statute for rescinding in absentia removals with the no time limit. And the court said in Singh, in his Chavez rule, one document applies to in absentia removals. So in that case, if someone didn't get the notice at all, never got a piece of paper, like in Pereira, or got a notice that is not sufficient, not compliant with the statute as construed in his Chavez, if Singh v. Garland remains the law of the circuit, that person would have a remedy in immigration court itself. Are you endorsing it, that we should keep it as the law of the circuit? I'm not, Your Honor, because the time for rehearing hasn't run, and Solicitor General has to pass on that. So I'm not endorsing it. But I think that even if Singh's application is Chavez or cut back, the statute by its terms still says that you didn't actually get the notice, which I understood what Judge Orlock was saying. You never got the piece of paper. You didn't even know you'd had a hearing. The statute by its plain terms, without regard to his Chavez, says you can come back to immigration court and rescind no time limitation, the special rule for in absentia proceedings. And that would apply under your claims processing interpretation of the regulations? Yes. I think the significance of the claim processing rule, Your Honor, is, again, whether it's an automatic termination, right, but this is a question of whether you have to timely inject and make some kind of prejudice showing, if not, to just terminate the proceedings that are going on against you in immigration court. The scenario we were discussing is you didn't get notice when an order was entered against you. You have a statutory right to come back and get that eliminated. We'll join in reserve with that one. Thank you, Your Honor. Roger, Your Honor. I have the pleas of court. Chief Judge McGill, members of the Onlock panel. I'm here to represent Mr. Bestia Hernandez. I believe this court needs to take home only five things to resolve the issues in this appeal. First, the statutes and regulations that are of concern here require certain information, specifically here the date and time of removal hearing, to be included in a notice to appear, and those requirements do control Big J jurisdiction or authority of the immigration court to act and to ultimately issue a removal order. Second, those requirements are not claim processing rules, and I want to be clear, the government is asking you to overrule prior panel precedent to find that claim processing rules analysis should apply. Third, Board of Immigration Appeals positions on this matter are not entitled to deference. This court has already found repeatedly that the Board of Immigration Appeals is getting this analysis wrong. Fourth, defective notices to appear cannot be cured unless this court finds that H.C.F.R. 1003.18, which contains the where practicable language, does not contradict the statutes. If it does not contradict the statutes, it could be cured through a notice of hearing under that regulation. And fifth, Palomar-Santiago and 13206D do not provide a barrier to relief when you're challenging subject matter jurisdiction and authority of an immigration court. But at worst, this panel must remand to the district court because Mr. Bestia Hernandez was not given an opportunity to present evidence regarding 13206D because that was not at issue before the district court, because the district court excused him from being there. Well, if you assume that Mr. Bestia Hernandez must satisfy the requirements, just for hypothetically, of 13206D, what are his best arguments that he can't satisfy those requirements? Your Honor, if 13206D must be satisfied even where the court has found defective NTAs, I mean, there's no jurisdiction and there's no authority, the argument would be you cannot have legitimately available administrative remedies and judicial process where the entire removal order, the entire action of the immigration court is ultra-various, is outside of its statutory authority. Well, you've conceded that Mr. Bestia Hernandez participated in this removal hearing in 2206. Doesn't that create a presumption that he received due process in those proceedings? First, Your Honor, based on the record, it appears Mr. Bestia Hernandez was present likely by video or phone. He was not there in person because the removal order was served on him via fax to a custodial officer. Well, but does that make him less there? It could, Your Honor, in the sense that there's more layers in that instance of translation and notice that have to be given to make sure he understands his rights. We also don't have the removal recording, so we don't know precisely what happened at that hearing other than that one page order. Do we know when it was faxed to the judge? We do not, Your Honor. Counsel, in responding to Judge Callahan, you said that the immigration, they lack authority when it's outside their statutory authority. That's right, Your Honor. What is the statutory basis for the Big J jurisdiction lacking here? The statutory authority comes from both 1229 and from 1229a, Your Honor. 1229a clearly says immigration removal proceedings will be exclusively conducted by immigration judges, and 1229 specifically says we initiate removal proceedings before an immigration judge by service of a notice to appear containing specifically delineated information. It doesn't say that. It doesn't have language that says, I mean, the caption says initiation, but all it just says is that in removal proceedings, written notice shall be provided. We normally treat a summons as different from a complaint. In the immigration system now, we combine the two, but is there any other situation in which a summons is treated as jurisdictionally significant in the subject matter sense as opposed to the personal jurisdiction sense? Your Honor, I don't know of any example where a summons is given jurisdictional effect, but the important thing is a notice to appear is not a simple summons. It is the charging document that initiates proceedings. And I actually want to address a question you've raised to the government on their argument about the transition statute in IHRA. The government, and frankly the Tenth Circuit, have misread that. It does reference a notice of hearing which transitioned noncitizens from pre-IHRA law to post-IHRA law. But what that language actually says, and we've quoted this extensively in multiple briefs in this case, is that a notice of hearing to transition is sufficient to vest jurisdiction, just like notice provided under Section 239 of IHRA, which is 1229. So the statute in IHRA does clearly reference a notice to appear under 1229, despite the government's assertion to the effect of hearing. But is it talking about personal jurisdiction over the alien or subject matter jurisdiction? Your Honor, I will concede with the United States, jurisdiction, big J, little j, is troubling and causes a lot of problems. I think the Supreme Court's ruling in City of Harlem 10 actually makes this a lot more straightforward because they discuss this problem. The question is not, when you're dealing with agencies, the same as with courts about subject matter jurisdiction and personal jurisdiction. It's whether the agency, in this case the acting agency is the immigration judge under DOJ, has authority to act and has authority to take the action that they've done. If they do not, it is outside of their big J subject matter jurisdiction. It's outside of their statutory authority. That's the lesson the Supreme Court has taught us in City of Harlem 10, and frankly, as well, in Union Pacific. Let me ask you, if you were to be remanded to the district court, and it was determined that your client did not meet at least one of those criteria, although he needs to meet all of them under PALMAR, but let's just say there was just one, where would that leave you? Your Honor, I think the problem, and this gets to the question Your Honor asked, I think if this court finds that a defective NTA does affect big J jurisdiction, does affect authority, 1326D cannot be a barrier. There is extensive, longstanding, frankly, century-long case law that subject matter jurisdiction objections cannot be waived. But that's on direct appeal, not collateral attack. Right. I don't know how you deal with contract. Your Honor, I think the problem is that this is a collateral attack in the sense that a 1326D prosecution is collateral to the initial immigration prosecution, but this is a direct challenge in the instant criminal prosecution and in the direct appeal of that prosecution to this challenge. I think I'll ask you the same question to ask the government. It is a challenge here on the direct appeal, but the challenge is to a different proceeding. So, can you cite to me any cases that would say that there's a freestanding collateral attack, right? Your Honor, frankly. If it's, you know, in subject matter jurisdiction, that's not within the proceeding being attacked. Your Honor, frankly, I think that's the question for this court in this appeal as to immigration proceedings. Again, I think there's extensive. Why don't we just start with a simple answer. Is there such a case? And the answer may be no. But you'd like us to make a case. Is that what you're telling us? Your Honor, I believe there are cases that we have cited in our brief that say you can raise freestanding attacks to subject matter jurisdiction at any time in proceedings. If there are any of those cases in proceedings, it's true. You know, you've got criminal civil proceedings, even immigration proceedings. In the middle of your immigration proceeding, you can raise your hand and say, I think we have a problem here. Do any of those cases tell us that there's a freestanding collateral attack? So, that's what I'm trying to get at, that more narrow. So, I appreciate your citation of the others, but I'm really looking at that narrower question. I understand, Your Honor. The short answer is I can't cite a case specifically answering one way or another. I do believe that there are context and habeas proceedings on this issue that may address that. Offhand, I don't know that. If the court wants further briefing, if that question is ultimately dispositive, then I think we could get there. But, frankly, I know the panel has expressed a number of other concerns that may preclude getting to that particular question. I think there are a lot of questions. If we do disagree with you on this and think that 1326 applies, even if there is maybe a jurisdictional claim that needs to be raised if it can get there, how do you think it fits together? I don't know if you can answer the question I was asking about whether the NTA jurisdiction argument is the third prong of 1326 or something that comes after 1326 is satisfied with some other claim. I think it would best fit under the third prong, but I think that exhibits why it either is within 1326D or it isn't. I think trying to shoehorn subject matter jurisdiction and lack of authority into one of those three criteria is difficult because it doesn't fit. I think either 1326D does not apply at all when the issue is jurisdiction or jurisdiction is not ultimately an issue. Why would you say that? If there was a jurisdictional defect below, that could be raised in the context of the immigration proceedings. And that would get you to at least two parts of 1326. One, exhaustion or the ability to appeal. So why is it you think that subject matter jurisdiction somehow lives outside of 1326? Your Honor, I think part of the issue in terms of raising this before the immigration court or even the Board of Immigration Appeals in a direct appeal is that this court has long held that's not, and again, we're assuming in this context the regulations do control Big J jurisdiction, which this court held in Karen Keefey. Assuming that's the law this panel applies, this court has twice held in Espinoza Gutierrez v. Smith, Case Site 94, F3rd 1270, and Coit Coyt v. Holder, Case Site 593, F3rd 902, that the exhaustion doctrine, so essentially 1326D, at least in one case, predates the statute. But it doesn't bar challenges to regulations where those regulations are alleged to contradict the statute. And that's the ruling this court would actually have to preach to. And that would be the appeal. Correct. In fact, we would say on appeal, just as a general matter, you don't need to exhaust that. But now you're in front of us, which is the point two under 1326. And we're going to listen to your argument in the immigration proceeding context. So why doesn't that satisfy an ability to attack lack of jurisdiction? Your Honor, I think the issue is, again, assuming that exhaustion cannot apply here, so trying to shoehorn where would jurisdiction potentially fit in the 1326D-1-3-3 analysis. Perhaps someone would have to still prove prejudice if, you know, jurisdiction means there was no available administrative remedy that you could exhaust because of this exhaustion bar. And you're getting the opportunity for judicial review. You might still then attempt to have to prove prejudice. But the problem is, what's the proof? What's the prejudice a noncitizen suffers when the immigration court's very action itself is the problem? You're removed pursuant to a removal order that had no legal effect. That's the prejudice, is the removal pursuant to an unlawful order. It's akin to sending a defendant to prison for an unlawful judgment. The prejudice is the act itself of the immigration court of removing someone without lawful authority. But you're sort of jumping ahead saying you really cannot challenge it as a jurisdictional defect, which we see time and again jurisdictional defects related to how these very complicated immigration statutes fit together. And it would seem your client's case would fall right in the sweet spot of that kind of an appeal, wouldn't it? I believe your Honor's analysis is right. I think the ultimate point is that assuming we are correct, that the statutes or the regulations in whatever form control Big J jurisdiction, that should satisfy anything that Mr. Bestia and Hernandez needs to show in terms of exhaustion, in terms of judicial review and raising that challenge as a prosecution. But you're not going to argue that, like, his waiver of his right to appeal was defective and that's what you're going to use for Prong 1 and 2? I guess I assumed you were going to say something like that or that the facts didn't get to him or didn't get to him in time or something like that for Prongs 1 and 2. I would say two things to that, Your Honor. One, because we're holding 13-2060 should not apply, you shouldn't get to reach his appellate waiver because that's only relevant to 13-2060 analysis. Assuming 13-2060 does apply, I do believe his appeal waiver, and whether it was knowing or voluntary, is a relevant issue. And that's why remand would be appropriate, because we've never had the opportunity to present evidence to that question. So we're about the facts, potentially? Correct, Your Honor. So assuming 13-2060 applies, I know you disagree with that. Assuming it does. You would argue for remand? If this court finds that we must meet 13-2060, that Palomar-Santiago requires that, I believe this court must remand to give him the opportunity to address that question in the first instance. And he didn't have that before? That was not an issue before the district court because the district court explicitly excused 13-2060. So he did not have that opportunity. The court presumed it. And so what would you argue before the district court that you haven't already argued in your briefs? Among other things, I would argue about his appellate waiver, which I don't recall specifically briefing, but perhaps I have. This case has been open for quite a while. But I would specifically want to talk about his appeal waiver, and I would want to talk about prejudice that occurred to him within the removal hearing itself, some of which we may need more of a factual record because, again, we don't have the removal tapes. We don't know what advisements he was given. The only record of his hearing is a one-page removal judge order. We don't know. We know that he even got the curative notice of hearing. We don't, Your Honor. All we might know is that somebody who was holding him in detention brought him into a room where he was on a videoconference and did not have the opportunity to get counsel or even think about what he was going to say at that moment in time. Correct, Your Honor. The short answer is we don't know that he received it. We did submit evidence to the court. It was faxed to a custodial officer. We don't know when or if it was ever personally been passed on to Mr. Bastide-Hernandez, and we don't know if he affirmed that at the hearing. I think that actually gets to an interesting point. Again, we talked about seeing the garland in this recent panel decision that in absentia removal orders are effectively no good if there was a defect in the NTA. If this court reaches a conclusion that the government wants, you actually create a weird dichotomy between detained noncitizens who have no choice  and not detained noncitizens who are at liberty because if they don't show up and they get in an absentia removal order, what this court has said in seeing the garland is that defect matters, but for detained noncitizens it doesn't, yet it's the same document with the same missing information. There's no rational basis to distinguish the two cases. Again, if you side with the government, you are overruling Karen Keithy, you are overruling Aguilar for me, and you are overruling seeing the garland and many other cases. That's not quite true, right? Because if the person, if they're detained and they come and maybe they have five minutes of notice or whatever, but they're present and they can say, I don't have an attorney, I haven't had a chance to get an attorney, or there's been a defect in the process. So they're not exactly equivalent. Your Honor, the point I'm making is this court has found repeatedly in those cases I mentioned that defects in the notice to appear matter because the regulations control the vesting of jurisdiction. That's what this court has held repeatedly. And in seeing the garland it's held if there's an in absentia removal order, but there's a defect in the notice to appear, that matters. That order is now void because of that defect in the NTA. The scenario is only different because Mr. Bastian Hernandez was detained and had no choice but to show up. That's the only factual difference between him and the noncitizen in Sing who did not show up and got an in absentia removal order. Why don't we have a recording or a transcript from that recording? Your Honor, the government tried to find it. I can't speak to the efforts made to that, but they did not obtain that recording in the district court. Frankly, I don't know whether if at any point afterward it's ever come into the government's possession, but we requested it, and frankly upon remand I would have issues with that, separate and apart from this claim, but we don't have the recording because it was requested and never produced. I think your friend across the aisle, I think the argument he was making or was made that, oh well, all of that, but you just argued it doesn't matter because they could bring a due process argument later. What's your response to that? My initial response is that due process arguments are actually what 132060 is intended to address. 132060 was specifically enacted following the Supreme Court's ruling that you must give non-citizens an opportunity to raise due process claims regarding their underlying removal proceedings, so I think as an initial matter that distinguishes due process claims versus claims that the Immigration Court acted without authority. I think that's part of why 132060 is not required. Can you confirm how many times your client has either been deported or granted voluntary departure? On my memory, no, but I know those facts are in our briefs, Your Honor. It is not disputed how many times he's been removed. A lot of times, right? Your Honor, I believe lots of vague qualifier. I would say I've had many clients who have a much more extensive history, including with removal orders. The important issue is this is the only removal order which gives the government any basis to prosecute him for 132060. Counsel, you want us to reach the jurisdictional question, right? Because it could affect how you argue the 132060 factors. As Your Honor is asking, assuming the court finds 132060 applies, also, Sure answer is yes, Your Honor. I think, frankly, as counsel noted, there's a lot of cases where this is pending. This has been before a lot of panels. At some point, the en banc surrogate needs to rule, and to be frank, I don't think it's appropriate to punt on that issue. I think this court is as informed as any panel could be. Don't do this for good health. So this will recur. Is that what you're saying? Your Honor, it will come back. If you don't reach that issue here, you will have to reach it at some point. It would matter here because it could come back, and that could be a different case on a different record with a different argument. But with respect to if there were a determination by the district court that your client did not meet at least one of those three points, then how would the jurisdiction argument that we're having here today make a difference in that determination? If this court reaches the jurisdiction substance and issues a ruling that's not in our favor, it would ultimately move whether we meet 132060 because we're losing on the substance of the argument in response to the judge's question. What I'm trying to say is this court needs to address this issue. I'm not understanding why. That's what I'm trying to understand. If you'd like to have an answer, but let's say that we rule in your favor, and that depends on how you read it, but even here in Geethi, depending on how you use the word jurisdiction, but in any event, it's possible to have curative notices that, in effect, relate back. If we ruled that way, I'm not sure how that would affect your client. If we ruled the other way, to say that the court had adjudicatory authority, end of story, how would that affect your argument in district court? Your Honor, if the court reaches the finding that the court had adjudicatory authority, that I lose on the substance of my jurisdictional argument, you should not reach 132060 because you don't have to. If you say that the government's right, this is a claim processing rule, then you don't need to reach 132060. I believe what Your Honor was asking was if 132060 applies, should you still reach jurisdiction? I believe you should. I understand there's an argument to the contrary, that you should limit your ruling as narrowly as possible, but I believe, frankly, as a matter of judicial efficiency, getting an answer to this question that's been pending for three-plus years. I have a question on the substance of that because I take it that your position as Karen Geethi was also wrongly decided because you think that when Karen Geethi said the regulations, not Section 1229A, define when jurisdiction vests, you would say that's wrong. I believe there's an argument that it's wrong and that the statutes require a notice to appear and it cannot be cured through a notice of hearing. If the court says that due to the lack of jurisdictional language in the statutes that the regulations are controlling, I actually believe Karen Geethi is rightly decided, except that the Supreme Court, at least in my opinion and Ms. Chavez made clear, 1003.18 is not good law. A notice to appear in any context, regardless of stop-time rule, the one-year period for post-conclusion voluntary departure in absence of removals, anything that is a notice to appear must meet 1229's definition. So I disagree with Karen Geethi only on that one point. But Karen Geethi was not a stop-time case, correct? It was not. And could you point to me where in the Supreme Court's ruling in Ms. Chavez that the court said what you're saying, that this applies in all contexts, not just in a stop-time context? The Supreme Court did not say all contexts, but the Supreme Court throughout Ms. Chavez referenced multiple other immigration statutes where notices to appear must be in compliance with 1229 beyond the stop-time rule. They cited that repeatedly. We've pointed it out in our briefs to the court. I don't have them memorized. Were any of those jurisdictional, though? Were any of the points the court raised? Were any of those cases that the Supreme Court cited to examples that affected jurisdiction or just whether a proper notice to appear was provided? I believe they can be read as jurisdictional in the sense of when jurisdiction, big J, is equated to authority to act. I think there are instances where the Supreme Court in Ms. Chavez cited statutes that would say the action was without authority under the statute, that it contradicted the statute. Have they ever stated in this particular factual context of an immigration judge's ability to assure? The short answer is no. And frankly, it's because that wasn't before the Supreme Court. None of the parties at any level and at any court said there was a lack of jurisdiction. That's why it's not really curious the Supreme Court did not raise that. It's a response, A, because no one else did, and it wasn't an issue. It was in their contemplation. It only arises because of the Supreme Court's ruling. Do you think Aguilar-Firmin was rightly decided or wrongly decided? I believe, again, if the court is looking at the regulations, Aguilar-Firmin depends on a reading that only one sentence of 1003.14 controls jurisdiction. A very limited part of the regulations, not the remainder, and not any other regulations beside it. I actually think Judge Smith, in the original panel ruling, points out the problem between the two regulations, the issue here in Geethi, which dealt with 3.18, and Aguilar-Firmin, which deals with 3.15, is one contained this where practicable language, which opens up the idea of cure. 3.15 does not contain that language, and that's, to be clear, why the BIA changed its position in matter of Rosales-Vargas to say this is a claim processing issue, because when you're in 3.15 and those requirements of an NTA and you don't meet them, there isn't a concept in that particular regulation of a future cure. That's only in 3.18. So, again, I think there's a... It's not that they're wrong, they're rightly decided. I think it depends on if this court concludes Karen Geethi was rightly decided, and Aguilar-Firmin arguably contradicts Karen Geethi. If Karen Geethi was wrongly decided, does that automatically say that Aguilar-Firmin was rightly decided? It does not. They both could be wrongly decided. Frankly, the argument that they're both wrongly decided is the regulations, control, and jurisdiction thus subject to the statutory definition of a notice to appear under 1229. I'm curious. I was hoping you could explain your prior answer. Let's assume 1326D applies, or let's just assume that's what's decided here, and that remand to the district court is appropriate for the reasons that you argue, that there might be these issues that you equate with due process. You still are encouraging us to decide these broader jurisdictional questions. Is there nothing that could happen below that would affect our decision? No, because the facts will remain unchanged that the notice to appear will still be defective. Nothing will happen below that affects that decision. So that is why I think it's appropriate for this court to still reach jurisdiction, because those facts won't change on remand. Either way, it's not necessary. Certainly not. If the court finds that 1326D applies and, therefore, remand is necessary, it's not necessary for this court to reach jurisdiction. I think the court ought to. I understand the court may have inclinations otherwise. I want to follow up on that because I'm not entirely sure I understand something else that you said. You said if we disagree with you on the merits of the jurisdiction question and we say that the contents of an NTA are not jurisdictional, that we don't have to reach 1326. You do not. And I'm not sure I understand why that's true. Is that because of how you framed the litigation, like the challenge here? Because if we lose on the merits, it doesn't matter whether we exhausted our remand. So it doesn't matter if we satisfy 1326D if we can't satisfy the substance of the argument. And that's because you think if it was claims processing, it wasn't raised in time. That's the difference. Correct. If the court reaches the conclusion that it's claim processing, frankly, based on the record right now, there's no dispute that it wasn't reached. But we would need to perform 1326D analysis. In your mind, when would your client have had the opportunity to earlier raise the defect? Your Honor, I don't dispute he could have raised it in his underlying immigration proceedings. I would say he had no incentive to because the Supreme Court's ruling giving him this claim does not happen until decades later. But he could have raised it in his removal proceedings. We're not denying he had that opportunity, at least so far as we know. Again, if we have the recording, maybe he's never given an opportunity to speak and therefore could not have literally raised it because he was never inquired. We don't know the facts of his removal hearings. I guess I'm just trying to figure out if we just rule on the jurisdiction, the big J, I guess. Yes. There's no remand for 1326. That's correct. That is my position. If you say I do not win on the jurisdiction issue, remand for 1326D is not necessary, again, because you've already held I lose on my substantive argument. Is that definitely true? I mean, your answer to Judge Forrest actually made it sound less true than I thought. So if you don't really have, if you need factual development about what happened, how do you know if he didn't raise this? The facts of what happened in his hearing will not change the fact that the notice 2 appears defective. So if the court finds No, I understand that. But your reason that you think claims processing would put you out of luck is because you think he didn't raise it. But if you're going to somehow find the transcript on remand, maybe he did raise it. And he could still have preserved the claim processing argument, maybe. Your Honor, if the court finds that the defective NTA does not affect jurisdiction and this should be claim processing, I think the ultimate point is remand to this district court will have to happen as a matter of fact because you're reversing the grant of a motion to dismiss. So it's, I understand the hypothetical and why the court's asking. I think if you say I lose on substance, we go back to the district court. If I win on substance but Palomar-Santiago applies, we still should go back to the district court to address 13-2016. Well, that's different from what you were just arguing right now. I hope I clarified, Your Honor, and was not speaking poorly. In the time I have remaining, I'd like to briefly address this claim processing rule and make clear the United States has not cited a single case anywhere where there's a comparable scenario where the United States government initiates removal proceedings to remove a human being from this country. The government intentionally chooses to not comply with a clear statutory directive. This is a notice to appear. This is its defined contents. It is what it must include. We don't need to do that. And the United States would get the benefit of claims processing analysis. All claim processing analysis cases typically involve minor procedural steps by civil litigants. This is simply not comparable. Claims processing analysis has never been applied to anything similar to this process. Well, that's what all the other circuit courts have held. In this particular question, I believe seven circuits have held a claim processing rule. Analysis applies. What I'm telling you is you should find they are wrong, and you should stand by the fact that this does affect you. Well, I just said there's no other court that has said what the government is arguing. It sounds like 700 courts have said what the government is arguing. No other court has said what you're arguing. No other court has found it in any context except this. And, again, there's a split in the circuits on that issue as to whether this is claim processing or not. No other case in any other scenario has ever been comparable to this. Thank you. Thank you. May it please the Court. I was hoping to make four quick points in rebuttal. First, on the- Very fast. See, that's all great. I'm always excited for this. This is where it's going to come in handy for once, right? Now, on 1326, I don't think this case is immediately different from Palomar-Santiago in the idea of authority or ultra-virus, right? The problem in Palomar-Santiago was that under an intervening decision of courts, the defendant was never, never removable. Immigration courts never really had authority because under this legal fiction we employ, the case law construed statutes to mean what they always meant. The judge was wrong. The DUI conviction there should not have allowed someone's removal. Yet the court said, you lack authority, could have been raised. So I think it's the exact parallel here. So that to me is not a distinction that the court should adopt. Secondly, Mr. Shelton said several times that the notice of appearance is defective. If this court is sticking with Karen Giffey, then under Karen Giffey's analysis, there was no defect here. This is not a time and date case. And as Karen Giffey construed the interplay between statute and regulation, that can come in later notice where practicable. And so the initial charging document that's filed is the one that commences proceedings. Was it cured here? Was the defect cured here? We don't know. That's the factual uncertainty Mr. Shelton referenced, right? We have information, as the court is aware, about the faxing to the custodial officer. But we don't know definitively. Since Ms. Chavez, has the government stopped doing this two-step notice? That was going to be my last point, Your Honor. We are trying. And so as of February 11th of this year, the immigration courts adopted, it's called ECAS, electronic filing system. It gives Department of Homeland Security folks access to the calendaring system, essentially. This is referenced initially in the former IJ's amicus brief in this court that's before you right now. But it's developed even further since then. I cannot say that every case is going to fall within that. Mr. Shelton mentioned detained cases, which pose very unique problems. Some border control issues that this court is painfully familiar with recur from time to time. But this system is designed to minimize the instances in which the initial notice to appear will have to be determined or to be set dates. On that notice to appear, the statute, the regulations say it has to be in person or by mail. And here it was by fax, which is neither in person nor by mail. And that would go from the record. So because that's what the government tells us. So if that's the case, was there any notice given here that could be considered curative? Yes, because we don't construe by fax as being kind of a third alternative to what Your Honor just said, a personal service or mail. This would be personal service via the custodial officer. The idea is the fax is to the custodial officer who would personally hand it to someone in detention. Where do I find that in the regulations? I don't think you're going to find it laid out that way. But that is a good way to effectuate personal service. Well, it is. But I mean, even in the federal rules, there's been cases that faxes are not the same. So here is the government basically saying, well, if someone is incarcerated or detained, then we take fax to the facility as being equivalent to personal service. I don't think it's equivalent. We expect personal service actually to be made. I don't think that handing someone on the street a document necessarily versus handing it to them in custody is different as far as the meaning of personal services. I agree with Your Honor. It's not supposed to be a third mean. It's supposed to be a way, as we've seen in this system, when you have a court, immigration courts, and a different arm of the executive branch, DHS, doing or used to be INS, doing the charging enforcement. That's what has to happen. It's a fax. It's sending something from the immigration court system to the enforcement authority to effectuate the personal service. And I think that would be the last point I can make, Your Honor. A lot of this stuff I think is backward looking. I've tried to explain to the court steps being taken to solve the Ms. Chavez Pereira problem, but a lot of these cases that you are all seeing come from 2006, this case, the companion case. Mr. Sheldon argued the same day. Gonzalo's Valencia was 2001. These are cases that happened a long time ago when maybe the practicalities of effectuating service are different. So I'm not saying that you should excuse that. The government takes its obligations seriously, but there's been a lot of shifts in the law and in practicalities here that we're all trying to get our heads around. And so I know there's a lot of concepts flying around, but I hope I can clarify that for the court. And I hope that on any of the grounds we've raised, the court will reverse the dismissal of the indictment. Thank you. Thank you. Thank you, Mr. Sheldon and Mr. Meisler, for your excellent presentations here today. The case of United States of America v. Juan Carlos Bastida, if not listed, is now submitted. We are adjourned. Thank you. All rise. This court for this session is now adjourned.
judges: MURGUIA, McKEOWN, WARDLAW, CALLAHAN, CHRISTEN, OWENS, FRIEDLAND, NELSON, COLLINS, FORREST, BUMATAY